**The below described is SIGNED.**

**Dated: May 27, 2009**

_____/s/ William J. Thurman_____
**WILLIAM T. THURMAN**
**U.S. Bankruptcy Chief Judge**



_____

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH

### CENTRAL DIVISION

| | |
|---|---|
| **In re:** | |
| **Wilburgene, LLC,** | **Bankruptcy No. 08-22650** |
| Debtor. | **Chapter 11** |
| | |
| **WILBURGENE, LLC,** a Utah Limited Liability Company, | |
| | **Adversary Proceeding 08-02101** |
| Plaintiff, | |
| v. | |
| **EUGENE KWON, KAMPAI RESTAURANT, LLC F/K/A/ KAMPAI LLC, BRUCE J. NELSON, KIRK BLOSCH, MARTIN W. MERRILL, and DAVID O'BAGY,** | |
| Defendants. | |

### MEMORANDUM DECISION

The matter before the Court is the Defendants' Kirk Blosch, Martin Merrill and David O'Bagy's (the "Defendants" or "Blosch Group") motion for partial summary judgment and the Plaintiff, Wilburgene, LLC's (the "Debtor" or "Wilburgene"), cross-motion for summary

judgment. The Court conducted a hearing on these matters on April 30, 2009. This matter was initially brought by the Plaintiff in state court at which time the Blosch Group along with Eugene Kwon ("Kwon") filed a motion for partial summary judgment, which is one of the motions before the Court today. Before that motion was fully considered by the state court, the Plaintiff filed for chapter 11 bankruptcy protection and the matter was removed to this Court. After being removed to this Court, the Plaintiff filed a cross-motion for summary judgment.

At the conclusion of the hearing, the Court took these matters under advisement. Based upon the two motions, the opposing and reply memoranda, and the parties respective oral arguments, the Court issues the following Memorandum Decision, which will constitute its findings of fact and conclusions of law as required by Rule 52 of the Federal Rules of Civil Procedure.[1] The Court has previously issued its oral ruling on this matter at the hearing on April 30, 2009, and this Memorandum Decision memorializes that ruling.

## I. JURISDICTION AND VENUE

The Court has jurisdiction over the parties and the subject matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and (c)(1). Venue is proper in the Central Division of the District of Utah under 28 U.S.C. § 1409(a). Notice is appropriate in all respects.

## II. BACKGROUND

This proceeding involves a purported member of a limited liability company ("LLC") granting a trust deed on LLC property for his personal obligation. The holder of the trust deed

---

[1] Rule 52 of the Federal Rules of Civil Procedure is made applicable to this proceeding by Rules 9014 and 7052 of the Federal Rules of Bankruptcy Procedure.

contends that the purported member did have authority to encumber the property but the Debtor disputes this.

The Debtor, a Utah limited liability company, filed its chapter 11 petition on April 25, 2008. Dr. Wilbur Sandbulte ("Sandbulte") signed the petition as the Debtor's managing member, and has been its sole member since the petition date. In 2004, Sandbulte and Kwon entered into a business venture to purchase a commercial lot and building located at 586 Main Street in Park City, Utah (the "Property"). In June 2004, Kwon formed Wilburgene for the purpose of purchasing the Property. Wilburgene was formed as a member-managed entity with Sandbulte and Kwon listed as its initial members.

Sandbulte delegated most of the initial formation and operation duties to Kwon without much oversight. Kwon signed a number of documents on behalf of Wilburgene, as either its manager or member, relating to its business affairs, including the company's Operating Agreement, Articles of Organization, loan documents with Zions First National Bank ("Zions Bank"), a tax letter, and a plat map recorded with the Summit County Recorder's Office. He also signed the shareholders' meeting resolution[2] removing himself as a member on December 7, 2007.

Sandbulte contributed approximately $330,000 towards the purchase of the Property, and the remaining purchase price of $1,500,000 was financed through Zions Bank. There is no evidence that Kwon made any monetary contributions towards the purchase of the Property. The Property and the rent generated from it is Wiburgene's primary asset. The Debtor values the Property on its schedules at $1,750,000. The Debtor's liabilities as reflected on its schedules are

---

[2] Although titled "shareholder minutes," since there are no shareholders in an LLC, the Court interprets these as members' meeting minutes.

as follows: (1) $1,082.215.19 as a secured claim held by Zions Bank, which is secured against the Property; (2) a disputed secured claim held by the Blosch Group in an undetermined amount; and (3) a priority claim in favor of the Summit County Treasurer in the amount of $8,190.87. The Debtor disputes the secured claim of the Blosh Group.

In July 2006, the Blosch Group made a personal loan to Kwon as memorialized in a Promissory Note wherein Kirk Blosch, Martin Merrill and David O'Baggy agreed to lend $1,050,000 to Eugene Kwon (the "Original Blosch Note"). The Original Blosch Note was signed by Eugene Kwon individually and on behalf of Latitude RG, Inc. ("Lattitude") and Schoolhouse Downtown, LLC ("Schoolhouse") – two other entities either owned or controlled by Kwon but not the Debtor. The Blosch Note accrues interest at the rate of 60% per year after default, which occurred in October 2006.

At the time that Kwon obtained the loan from the Blosch Group, he had a long term loan commitment from Ixis Real Estate Capital, Inc. ("Ixis") for approximately $1 million, which was held in escrow and would be released after certain conditions had been satisfied. The Blosch Loan was intended to be a bridge loan to fund Kwon temporarily until the Ixis loan was released. The Blosch Group was advised by Kwon that its loan would be repaid out of the Ixis loan. The Original Blosch Note was due on or before October 12, 2006, or when the Ixis funds held in the escrow account were disbursed, whichever occurred first. The Blosch Loan was not paid when it became due. The Ixis funds were, in fact, released to Kwon and he used the funds for other purposes without paying the Blosch Group. Several weeks later, Kwon admitted to the Blosch Group that he had spent those funds, and that the funds were no longer available to payoff the Blosch Loan.

After Kwon defaulted on the Original Blosch Note, the Blosch Group expressed concerns to Kwon who agreed to execute an Amended Promissory Note (the "Amended Blosch Note"). The Amended Blosch Note was executed on December 1, 2006, by Kwon individually and on behalf of Lattitude and Schoolhouse, in the amount of $1,308,731.43. Wilbergene was not part of the Amended Blosch Note. In addition to the Amended Blosch Note, Kwon also executed a deed of trust in favor of the Blosch Group (the "Blosch Trust Deed") using the Property as collateral for the Blosch Loan. He signed it as the "manager" of the Debtor, in effect purporting to cause the Debtor to pledge the Property to secure the Blosch Loan.

According to Wilburgene's Articles of Organization, Wilburgene was to be managed by its members. There was no designated "manager" under the Articles of Organization or in any of the other company documents. No meeting was ever held between Sandbulte and Kwon to authorize the pledging of the property to the Blosh Group. Sandbulte never gave his approval for the conveyance of the Blosch Trust Deed. In fact, he did not know anything about the trust deed until months later when he first learned about it from members of the Blosh Group.

Prior to accepting the Blosch Trust Deed from Kwon, Martin Merrill, one of the members of Blosch Group, who was also a former owner of a Utah title company, checked the website of the Utah Department of Commerce for corporate and business information relating to Wilburgene. He learned from that inspection that Kwon was a member and the registered agent for Wilbergene LLC. Shortly thereafter, he met with Kwon who had indicated to Merrill that he "owned" the building located on the Property. Kwon also told Merrill that he was a manager of Wilbergene even though the State of Utah's business records did not reflect this. Sometime

5

between late November and early December 2006, Merrill did further research and learned that Sandbulte was also a member of Wilbergene. Merrill also obtained a copy of the Articles of Organization prior to December 1, 2006, which showed the signatures of Kwon and Sandbulte as members, and that Wilbergene was managed by its members, Kwon and Sandbulte. Additionally, Merrill obtained a title report of the Property, which showed that it was encumbered by a first priority lien of Zions Bank. Merrill did not obtain a copy of the Debtor's Operating Agreement prior to accepting the Blosch Trust Deed but received a copy of it shortly thereafter, which listed Kwon and Sandbulte as members. The Operating Agreement bore Kwon's and Sandbulte's signatures.

The Amended Blosch Note was never paid, and the Blosch Group commenced foreclosure proceedings against the Property. Kwon was removed as a member of the Debtor on December 7, 2007, as reflected in the minutes of the shareholders meeting held that day. On July 3, 2007, the Debtor and Sandbulte filed a state court action against the Blosch Group in the Third Judicial District Court for Summit County (the "State Court Action") to stop the foreclosure sale initiated by the Blosch Group scheduled for July 11, 2007. Among the various causes of action asserted in the State Court Action, the Debtor sought to remove the Blosch Group's lien on the grounds that the Blosch Trust Deed was not authorized or properly signed by Wilbergene. The Blosch Group strenuously opposes the Debtor's and Sandbulte's claims asserted in the State Court Action.

A plan of reorganization along with a disclosure statement has been filed by the Debtor. A hearing on the disclosure statement was conducted on January 20, 2009, at which time the Court approved the same with certain amendments. In summary, the Plan provides for a sale of

6

the Property to the highest bidder, but with sufficient amounts to clear out the secured claim of Zions Bank. If the Blosch Group lien survives the claims in the adversary proceeding, the Blosch Group will be paid the value of its lien. If it is avoided, it will receive nothing. The plan has not been presented for confirmation as of the date of this Memorandum Decision.

**III.   DISCUSSION**

Under *Butner v. United States*,[3] bankruptcy courts must look to state law for the determination of rights in property. Ownership rights in real property, and the authority to execute documents encumbering the property of the Debtor are at the heart of this proceeding. Accordingly, the Court will look to the laws of the State of Utah to determine, among other issues, the validity and enforcement of the Blosch Trust Deed.

The Plaintiff asserts that the Blosch Trust Deed is invalid under Utah law for several reasons. First, that Kwon had no authority to bind Wilburgene because he did not have an economic interest in the company and, as such, he was not a member. As Wilburgene is member-managed and Kwon was not a member, he could not bind the company or encumber the Property by giving a trust deed to the Blosch Group. Second, even if Kwon is found to be a member of Wilburgene, his actions could not bind the company under § 48-2c-802(1) of the Utah Code[4] because his encumbering of the Property was not in the ordinary course of the company's business.

The Defendants disagree, arguing that subsection (3) rather than subsection (1) of § 48-2c-802 should apply in this case. They claim that under subsection (3), the Court should find

---

[3]   440 U.S. 48 (1979).

[4]   UTAH CODE ANN. § 48-2c-802(1) (2008). All subsequent references to title 48 section 2c will be to the Utah Code.

that the Blosch Trust Deed was valid because Wilburgene's Articles of Organization did not expressly limit Kwon's authority, and they gave value without knowledge of any lack of authority on the part of Kwon.

This is a case of first impression for this Court and, indeed, neither party has cited any applicable Utah case law directly on point. The Utah Code sections constituting the crux of the Plaintiff's and the Defendants' arguments are found in § 48-2c-802 of the Utah Revised Limited Liability Company Act, and will be addressed in turn.

    A.    <u>Kwon was a Member and a Manger of Wilbergene at the Time He Executed the Blosch Trust Deed</u>

Section 48-2c-802(1) provides as follows:

(1) Except as provided in Subsection (3), in a member-managed company: (a) each member is an agent of the company for the purpose of its business; (b) an act of a member, including the signing of a document in the company name, for apparently carrying on in the ordinary course of the company business, or business of the kind carried on by the company, binds the company, unless the member had no authority to act for the company in the particular matter and the lack of authority was expressly described in the articles of organization or the person with whom the member was dealing knew or otherwise had notice that the member lacked authority; and (c) an act of a member which is not apparently for carrying on in the ordinary course of the company business, or business of the kind carried on by the company, binds the company only if the act was authorized by the other members in accordance with Section 48-2c-803.[5]

Section 48-2c-802(3) provides an exception to this rule, and states as follows:

Notwithstanding the provisions of Subsections (1) and (2), unless the articles of organization expressly limit their authority, any member in a member-managed company, or any manager in a manager-managed company, may sign, acknowledge, and deliver any document transferring or affecting the company's interest in real or personal property, and if the authority is not so limited, the document shall be

---

    [5]    *Id.*

conclusive in favor of a person who gives value without knowledge of the lack of authority of the person who signs and delivers the document.[6]

Before the Court can address either of the foregoing statutes, it must resolve the threshold question of whether Kwon was a member of Wilburgene at the time he signed and delivered the Blosch Trust Deed. Section 48-2c-102(13) defines a "member" as "a person with: (a) an ownership interest in a company, and (b) the rights and obligations specified under this chapter."[7] Further, § 48-2c-702 states that "[i]n connection with the formation of a company, a person becomes a member of the company upon the earliest to occur of the following: (a) when the person signs the articles of organization as a member; (b) when the person signs the operating agreement as a member. . . ."[8]

It is clear to the Court that Kwon was an initial member of Wilburgene. He signed both the Operating Agreement and the Articles of Organization as a member pursuant to § 48-2c-702. He also signed numerous other documents for and on behalf of the Debtor as a member or manager. The Debtor has taken no action to invalidate any of those acts, other than the Blosh Group Trust Deed.

The Plaintiff contends that either Kwon was never a member or he ceased to be a member because he held no economic interest in the company. The Plaintiff urges the Court to treat a membership in an LLC as being synonymous with having an "interest in the company" as defined in § 48-2c-102(10). That section defines an "interest in the company" as a "member's economic rights in the company including the right to receive: (a) a distribution from the

---

[6] UTAH CODE ANN. § 48-2c-802(3) (2008).

[7] UTAH CODE ANN. § 48-2c-102(13) (2008).

[8] UTAH CODE ANN. § 48-2c-702 (2008).

9

company, and (b) a portion of the net assets of the company upon dissolution and winding up of the company."[9] The Plaintiff asserts that since only Sandbulte receives income from the company, has sole control over the company's bank account, and would receive any and all distributions upon dissolution, he is the only one with an economic interest in the company. As such, according to the Plaintiff Sandbulte always was and remains Wilburgene's only member.

Such a reading, however, contradicts the requirements of § 48-2c-702 that designate how one becomes a member (*i.e.*, by signing the Operating Agreement or the Articles of Organization). The Plaintiff's argument that Kwon never made any capital contributions or monetary investments in Wilburgene is equally unpersuasive because this argument fails to consider other types of investment such as services that may have been provided to the company by Kwon. Even if no services were provided, how the public perceived the Debtor and who represented it is as much or even more compelling.

Kwon acted as a member of the company, both on his own and in conjunction with Sandbulte. These acts include the signing of the Articles of Organization, the plat map, the tax letter, the loan documents with Zions Bank, and the shareholders' resolution removing himself as a member in December 2007. One wonders why would the minutes of the December 7, 2007 meeting reflect that Kwon was being removed as a member if he was not already an existing member? The argument that not having an economic interest in the LLC means that he was not a member is insufficient to outweigh the outward and public appearance and conduct by Kwon that he, in fact, represented the Wilburgene as a member. Accordingly, the Court finds and concludes that Kwon was a member of Wilburgene until his removal on December 7, 2007.

---

[9] UTAH CODE ANN. § 48-2c-102(1)(2008).

B.  The Validity of the Blosch Trust Deed

The Plaintiff, in its memorandum in support of its cross-motion for summary judgment and during oral argument, argued that even if Kwon was a member of Wilburgene the transfer of the Blosch Trust Deed is invalid because it was not transferred in the ordinary course of business as required under § 48-2c-802(1)(b). In support of its argument, the Plaintiff directs the Court to the Utah Supreme Court decision of *Luddington v. Bodenvest Ltd.*,[10] which considered a similar issue in the context of a limited partnership. In *Luddington*, the court found that a general partner who encumbered partnership property to secure loans for its personal benefit was not acting in the usual course of the partnership business and, therefore, could not bind the partnership.[11] The partnership in *Luddington* was made up of Granada, Inc. (general partner) and retirement trusts of various Utah medical practitioners (limited partners).[12] The partnership's assets at the time were 50 acres of land and $203,000 in cash.[13] Granada, without the knowledge or authority of the limited partners, borrowed a majority of the partnership's cash and executed three trust deeds encumbering the real property in favor of a lender in exchange for loans for Granada's sole benefit.[14]

---

[10]  855 P.2d 204 (Utah 1993).

[11]  *Id.* at 210-11.

[12]  *Id.* at 205.

[13]  *Id.* at 205-06.

[14]  *Id.* at 206.

Under the general and limited liability partnership sections of the Utah Code, "an act of a partner which is not apparently for the carrying on of the business of the partnership in the usual way does not bind the partnership, unless authorized by the other partners."[15] Applying this section of the Utah Code to the facts of that case, the court determined that Granada's transactions were not "in the usual way" of partnership business.[16] Therefore, the trust deed executed and delivered to the lender to secure a loan to Granada and its president was invalid.[17] Accordingly, the court held that the lender would bear the loss.

The Plaintiff argues that the analysis in *Luddington* is instructive here because the language in subsections (1)(b) and (1)(c) of § 48-2c-802 of the Limited Liability Act are nearly identical to sections (1) and (2) of § 48-1-6 of the Utah Limited Partnership Act in that they both classify the actions of a partner or a member by gauging whether the actions were in the usual or ordinary course of business. The Plaintiff acknowledges that the *Luddington* case applies partnership law to its facts but argues that the same application is relevant to the law and facts before the Court.

The Plaintiff's argument would likely prevail if § 48-2c-802 only included subsections (1) and (2). But that is not the case. While subsection (1) provides the general rule for acts of a member that may bind the company and certain limitations on the member's authority, subsection (3) provides an exception for acts concerning a transfer of the company's interest in

---

[15] UTAH CODE ANN. §48-1-6(2) (2008).

[16] *Luddington*, 855 P.2d at 210.

[17] *Id*. at 210-11.

real or personal property, or affecting the company's interest in the same.[18] In fact, subsection (1) begins with "[e]xcept as provided in Subsection (3) . . . ," and subsection (3) applies "notwithstanding the provisions of Subsections (1) and (2)." As this case involves a transfer of an LLC's interest in real property by a member, subsection (3) governs and serves as an exception to the general rule found in subsection (1). *Luddington* is, therefore, distinguishable because it deals with a provision in the Utah Limited Partnership Act, namely § 48-1-6, that, albeit similar in many parts to § 48-2c-802, does not contain the specific exception language found in subsection (3). That case is further distinguishable because paragraph 4 of § 48-2-9 of the Utah Code, which was in effect at the time of the events in *Luddington*, specifically precluded general partners from possessing partnership property or assigning their rights in specific partnership property for non-partnership purposes absent a written consent or ratification by all of the limited partners. No similar language existed in the Utah Revised Limited Liability Company Act in effect at the time of the signing of the Blosch Trust Deed. Accordingly, the Court is not persuaded that the holding in *Luddington* applies here.

One aspect of *Luddington* that does appear helpful to the Court, however, is where the Utah Supreme Court states, in dicta, "[t]he doctrine of apparent authority has its roots in equitable estoppel. It is founded on the idea that where one of the two persons must suffer from the wrong of a third, the loss should fall on that one whose conduct created the circumstances which made the loss possible."[19] The Court then goes on to give a three part test for applying

---

[18] UTAH CODE ANN. § 48-2c-802(3) (2008).

[19] *Luddington*, 855 P.2d at 209.

this principle. The Blosch Group appears to fall within the type of persons who should be protected under this reasoning.

    C.    Application of § 48-2c-802(3)

Having found that Kwon was a member of Wilburgene at the time he executed the Blosch Trust Deed, and having concluded that § 48-2c-802(3) governs this matter, the Court must now determine (1) whether Kwon had the authority to sign the Blosch Trust Deed transferring Wilbergene's interest in the Property to the Blosch Group, and (2) whether the Blosch Trust Deed should be conclusive in favor of the Blosch Group. Under § 48-2c-802(3), "unless the articles of organization expressly limit their authority, any member in a member-managed company, or any manager in a manger-managed company, may sign, acknowledge, and delivery any document transferring or affecting the company's interest in real or personal property. . . ."[20] Nothing in the Articles of Organization expressly or otherwise limits Kwon's authority as a member to sign, acknowledge, and deliver any document transferring Wilburgene's interest in the Property. There is no dispute that Kwon signed the Blosch Trust Deed as Wilburgene's manager transferring its interest in the Property to the Blosch Group to a secure a loan in the amount of $1,308,731.43. Consequently, under § 48-2c-802(3) the Blosch Trust Deed would be "conclusive in favor" of the Blosch Group if they (1) gave value, and (2) did so without knowledge of the lack of Kwon's authority. These issues will be addressed in turn.

---

    [20]    UTAH CODE ANN. § 48-2c-802(3) (2008).

1.  *The Meaning of "Value" under § 48-2c-802(3)*

The Court has already ruled that the Debtor received no value in exchange for the Blosch Trust Deed in an earlier summary judgment ruling on another issue. Although the Court has so ruled, it is undisputed that the Blosch Group gave consideration in exchange for the trust deed. The issue before the Court is whether the value given by the Blosch Group is within the scope of § 48-2c-802(3).

The Plaintiff argues for an interpretation of value consistent with that found in fraudulent transfer statutes. The Court notes, however, the difference between the protections provided under the fraudulent transfer statutes and those provided in the statutes at issue in this case. Fraudulent transfer statutes are meant to protect the creditors of an entity and, as such, the value given must be given to the entity itself and not to a third party. Whereas giving value under § 48-2c-802(3) could be interpreted as meaning that the one who *gives* value should be protected. The statute at issue here is more akin to a bona fide purchaser statute where the purpose is to protect a purchaser who gives value without knowledge of the seller's lack of authority. The requirement in the statute that either the articles of organization expressly limit the authority of a member so as to put a third party on notice, or that the third party have knowledge of lack of authority is consistent with such a reading of § 48-2c-802(3).

The Court concludes that value need not be given to Wilburgene to satisfy the requirements of § 48-2c-802(3). The Court finds that value, as required in § 48-2c-802(3), was given by the Blosch Group when they loaned the money, and/or by their forbearance in taking legal action against Kwon in exchange for accepting the Trust Deed. The Court recognizes that this might be an odd and harsh ruling since the party giving up a substantial interest in its

property did not receive the benefit of the consideration. Nevertheless, the Court is persuaded that this ruling is consistent with Utah law and the statutory scheme provided by the legislature.

Further, this entire situation could have likely been avoided or the potential for the loss greatly diminished with a bit more diligence at the time of the Debtor's formation by the other member in making sure that Kwon was not a member. Moreover, the other member could have monitored Kwon's control over the assets, disavowed Kwon's rights to sign the Zions Bank loan as a member, and taken other precautionary steps to prevent the present situation. Indeed, the discussion of apparent authority and equitable estoppel as stated by the Utah Supreme Court in *Luddington* is persuasive to the Court on this point.[21] Finally, when the minutes of the December 7, 2007 meeting specifically oust Kwon as a member, it is very difficult for the Court to find that he was never a member. These actions lessen the harshness of the Court's foregoing holding.

2. *The Issue of "Knowledge"*

The only remaining issue before the Court is whether the Blosch Group had the kind of knowledge of Kwon's lack of authority as required under § 48-2c-802(3). The determination of this issue is highly factual. The Court finds that there remains a disputed material issue of fact regarding the extent of the Blosch Group's knowledge regarding Kwon's lack of authority. As such, this issue will be set for trial and the parties will be provided an opportunity to present evidence on the issue of whether the Blosch Group had knowledge of Kwon's lack of authority at that time.

In addition to this issue, there remains a dispute as to the appropriate definition of

---

[21] *See supra* note 19.

"knowledge" under § 48-2c-802(3). Predictably, the Plaintiff has argued for an expansive definition of knowledge, including constructive or inquiry knowledge, while the Defendants have argued that actual knowledge is required. Although the parties have briefed the issue, the Court would like the assistance of the parties in refining its ruling on the definition of knowledge as applied here. The parties should, therefore, submit additional briefing on the specific issue of the type of knowledge that is required under § 48-2c-802(3).

## IV. CONCLUSION

Accordingly, the Court grants the Defendants' motion for partial summary judgment and denies the Plaintiff's cross motion for summary judgment on all issues except as to the issue of knowledge under § 48-2c-802(3). The Court further denies the Plaintiff's motion for summary judgment on the issue of knowledge and sustains the Defendants objection relating thereto. A separate order will accompany this Memorandum Decision.

oo00–00oo
**SERVICE LIST**

Service of the foregoing **MEMORANDUM DECISION** will be effected through the Bankruptcy Noticing Center to each party listed below:

Blake D. Miller
Craig H. Howe
Miller Guymon
165 Regent Street
Salt Lake City, UT 84111

Richard D. Burbidge
Burbidge Mitchell & Gross
215 South State Street #920
Salt Lake City, UT 84111

Mona Lyman Burton
Holland & Hart LLP
60 East South Temple, Suite 2000
Salt Lake City, UT 84111
John S. Chindlund
G. Troy Parkinson
Prince, Yeates & Geldzahler
175 East 400 South, Suite 900
Salt Lake City, UT 84111

Eugene Kwon
Kampai Restaurant LLC
67 West 100 South
Salt Lake City, UT 84101